**AFFIDAVIT IN SUPPORT OF**
**A CRIMINAL COMPLAINT AND SEARCH WARRANT APPLICATION**

I, Taylor Ward, a Special Agent with the Department of Homeland Security, being duly sworn, hereby state as follows:

**Affiant Background and Purpose of Application**

1. I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since November 2022. As such, I am an investigative or law enforcement officer of the United States, within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. I am presently assigned to the HSI office in Burlington, Vermont, whose geographic jurisdiction encompasses the District of Vermont, including its border with Canada. I have received extensive training provided by the Federal Law Enforcement Training Center and HSI in enforcement of the laws of the United States. I have received approximately 600 hours of instruction and training to include, but not limited to, investigating human trafficking and child exploitation offenses.

2. I make this affidavit in support of:

    a. An application for a criminal complaint charging Anthony Hamel with violating 18 U.S.C. § 2252A(a)(5) for knowingly possessing material that contains an image of child pornography that has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, and

    b. An application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to seize a black Apple iPhone XR with IMEI 35 948632 528878 3 (the Subject Device), described more fully in Attachment A. The Subject Device is currently in the custody of Homeland Security Investigations, 70 Kimball Avenue, South

1

Burlington, VT 05403. The requested search warrant would authorize seizure of evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2252 and 2252A, as described more fully in Attachment B. Based on my training and experience, the Subject Device has been stored in a manner such that the data on it will have remained intact and in the same condition as it was at the time of the Subject Device's seizure. The applied-for warrant would authorize the forensic examination of the Subject Device for the purpose of seizing electronically stored data, particularly described in Attachment B, that would evidence the aforementioned federal offense.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other agents or witnesses. This affidavit is intended only to show there is probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Unless specifically stated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

**Probable Cause**

4. On May 9, 2025, at approximately 4:00 pm, I responded to a duty call from the Highgate Springs Port of Entry (HSPOE) in Highgate, Vermont, about a Canadian citizen—identified as Anthony Hamel—who was seeking to cross the border from Canada into the United States at a lawful Port of Entry (POE). I was informed by HSI Task Force Officer (TFO) Chris Pike that Anthony Hamel had been detained by Customs and Border Protection (CBP) at the Morses Line, Vermont POE and was being moved to the HSPOE for further investigation.

5. Upon arrival to the HSPOE, CBP Officer (CBPO) Orsolits informed me that Hamel had entered primary inspection at the Morses Line POE to enter the United States from Canada

and was asked routine screening questions. CBPO Orsolits explained that Hamel was alone in his vehicle when Hamel attempted to cross the border into Vermont. CBPO Orsolits stated that during the primary screening, the CBPO at the Morses Line POE grew suspicious of Hamel due to his answers to routine border crossing questions and directed Hamel to secondary inspection. CBPO Orsolits informed me that it was during the secondary inspection that the Subject Device was seized from Hamel. CBPO Orsolits stated that the CBPO in secondary at the Morses Line POE searched the Subject Device, which had been in Hamel's possession upon presenting at the POE. The secondary inspection search, pursuant to border search authority, revealed potential CSAM. CBPO Orsolits informed me that, at that time, CBPOs decided to detain Hamel and bring him and his belongings to the HSPOE, a larger port with additional resources and officers, for further investigation.

6. After arriving at HSPOE, I was shown the Subject Device, which had remained in law enforcement custody since its seizure at the Morses Line POE. I continued the manual search of the Subject Device started by a CBPO at the Morses Line POE. I scrolled through the "Photos" application on the Subject Device by hand, and I selected the "Videos" tab under "Media Types" and began scrolling through the videos on the Subject Device. As I scrolled, I observed eight or more videos that, based on my training and experience, appeared to depict children under the age of 16 performing various sex acts. The videos were interspersed with other personal photos and videos in the applications depicting Hamel, suggesting that they were readily apparent to Hamel when accessing the Subject Device.

7. One of the videos I observed on the Subject Device showed what appeared to be a prepubescent female child—based on her lack of breast development, pubic hair, and the size of her body in comparison to the adults in the video—laying across the lap of an adult while an

3

adult male pulled the child's legs apart and inserted his erect penis into her vagina. After that point, the adult male continued the sex act on the prepubescent child for the duration of the video.

8. Another video I observed on the Subject Device showed what appeared to be a prepubescent male child—based on his lack of pubic hair development and the size of his body in comparison to the adult in the video—with an adult male kneeling over the top of the prepubescent male child with the adult's underwear pulled down so the adult male's erect penis was exposed in front of the prepubescent child's face. At the start of the video, the prepubescent male child grabbed the adult male's erect penis and put it into his mouth. The prepubescent male child began to move his head back and forth so the adult male's penis moved in and out of his mouth. The prepubescent male child continued the sex act until the video was over.

9. After briefly searching the Subject Device, HSI TFO Pike and I conducted a Mirandized and recorded interview with Hamel. During the interview, Hamel admitted to receiving and sending materials that he acknowledged were and that I know constituted CSAM—child pornography as defined in Title 18, United States Code, Section 2256(8)(A)—on a phone application he referred to as Telegram. Based on my training and experience, I know that Telegram is a commercial online messaging application that transfers messages and content through interstate and foreign telecommunications. Accordingly, any CSAM content on the Subject Device sent or received via Telegram would have been transported in interstate or foreign commerce; further, Hamel transported the Subject Device and its contents across the international border from Canada into the United States.

## Characteristics of Child Pornographers

10. Based upon my knowledge, experience, and training in child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know that there are certain characteristics common to many individuals involved in such crimes:

   a.   Those who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

   b.   Those who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Such individuals oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

   c.   Those who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes often possess and maintain copies of child-pornography material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home, or in some other secure location.

5

  d. Likewise, those who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area.

  e. Those who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes also may correspond with others to share information and materials.

  f. Those who produce, distribute, transport, receive, or possess child pornography, tend to maintain their collections for extended periods of time, often for years. It is also not uncommon for these individuals to store these collections on online cloud services, or email accounts, as this allows the secure storage of this material, as well as a simple way for the user to access and transfer this material from one device to another. It can also be difficult for U.S. law enforcement to access these online cloud accounts or email accounts, as there are many of these services which are provided by companies outside of the U.S.

  g. Some persons who are interested in child pornography will use their digital media to access child pornography, but they may not save that content to their digital media. In those situations, such content can in some circumstances still be recovered from their media or devices using forensic tools.

**Information Regarding Electronic Storage and Forensic Analysis**

11. Based on my knowledge, training, and experience, I know that electronic devices such as the Subject Device can store information for long periods of time. Similarly, things that

6

have been viewed via the Internet are typically stored for some period of time on such devices. This information can sometimes be recovered with forensics tools.

12. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant but also forensic evidence that establishes how the Subject Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Device because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a

device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

17. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## Conclusion and Requests

13. For the reasons described above, I submit there is probable cause to believe that, on or about May 9, 2025, in the District of Vermont, Anthony Hamel violated 18 U.S.C. § 2252A(a)(5)(B) by knowingly possessing images of child pornography—as defined in Title 18, United States Code, Section 2256(8)(A)—that had been shipped and transported using any means and facility of interstate and foreign commerce. I respectfully request the Court issue a Criminal Complaint charging him accordingly.

14. I further submit there is probable cause to believe that evidence of the violation of 18 U.S.C. §§ 2252 and 2252A is likely to result from the search of Anthony Hamel's black Apple iPhone XR with IMEI 35 948632 528878 3 (the Subject Device). Accordingly, I request the Court issue a search warrant for the search of the Subject Device, further described in Attachment A, and the seizure therefrom of the data described in Attachment B. Because the

requested warrant only seeks permission to examine the Subject Device, which is already in law enforcement's possession, execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Dated at Burlington, in the District of Vermont, this 10 day of May 2025.

TAYLOR J. WARD
Special Agent
Homeland Security Investigations

Sworn to and subscribed before me this 10th day of May 2025.

HON. KEVIN J. DOYLE
United States Magistrate Judge
District of Vermont